cases today. If you've told the deputy that any time you wish to reserve, then you needn't repeat that, just to know that. All right. And Mr. Fink, you may proceed. Actually, it's Mr. Frank. This is Mr. Fink. There you go. Well, why don't we have Mr. Frank? Yes. Thank you, Your Honor. May it please the Court, my name is Steve Frank from the Department of Justice, representing the appellant. Seated with me at council table is Galen Thorpe from our Federal Programs Trial Branch. Twenty years ago, almost, a panel of this Court held that booking photographs of federal detainees were not, under particular circumstances, were not protected from disclosure under Exemption 7C of the FOIA. Since that time, two other courts, the 11th and the 11th, have ruled the other way. So we have made a very careful step while respecting the decision of the panel. We are attempting to get to the full court. We understand that this panel cannot overturn another panel. But, so the question is, what are we doing here? And the answer to that, I think, is in Judge Sutton's concurrence. When we first brought this case before this Court, we sought initial in-bank ruling. And Judge Sutton, which was denied, and he agreed with that, but in his concurrence, he said that our petition had considerable force to it, and he said that a panel, which is you, will be able to get a shot at either bolstering our holding in the first case, or explaining why it should be overruled by the full court. He said, I, for one, would seriously consider a subsequent petition for rehearing in-bank. I take it, though, this morning that, I mean, one option, of course, is we could say we're bound by the other case, but we think it's a good idea. It's a good candidate for en banc and see what happens. But I take it you'd actually like us to say more than that. You are free to say whatever. I mean, you can honestly do anything from just a precurium affirmance to what we would like is what this court did in Adkins and has done in several other cases, which is the Adkins court said that we are bound by precedent, but we think that the full court should consider it and overturn it. There are several other cases like that where the panel signaled to the en banc court that they thought that the law was out of step with other circuit law and encouraged the en banc court to, so we are, what the government would like and is requesting this panel to do. Is a boost for the en banc. Is a boost for the en banc, and also to provide some analysis to the court, as Judge Sutton said, explaining why it should be overruled by the full court. So that does get us really to your position, and you say, and correct me if I'm not stating it right, but you're advocating a balancing test to determine if the privacy interest at stake outweighs the public interest. Is that a fair statement? Absolutely fair, Your Honor, and it's not just that we're advocating. That's the test laid down by the Supreme Court and reporters. And that being the case, though, there has to be a default position. I mean, every case can't be just at ground zero. So I take it your default position would be they aren't automatically releasable, and it would be up to the person who wants the mugshot to carry the day on the public interest of the exceeding the privacy right. That's pretty much correct, Your Honor. The court will balance the privacy interest versus the public interest and see which weighs the most. But the critical thing, and this is if I leave the court with nothing else, it's this that I would like the court in its mind. There's really one issue before this court today, and that issue is does a person have a non-trivial privacy interest in their mugshots? The first panel twenty years ago said there was no privacy interest whatsoever. And so therefore, since there was no privacy interest, there was nothing to balance. So that court didn't balance the privacy interest. In all fairness to the previous panel, we may not have emphasized enough in that case how low a bar it is for there to be some privacy interest. The courts say that it just has to be a non-trivial privacy interest. They use the phrase it must be more than de minimis. All we are asking this court to hold is that a privacy interest in mugshots is more than trivial. Once you hold that, then you have to get to the balancing test. And we're not saying, we're not asking this court to say that a privacy interest in booking photographs is the greatest privacy interest in the world. All we're saying, and we'd like this court to say or suggest to the in-bank court, is that yes, it meets that threshold. There's something there. How would this work in the real world? Right now, as I understand it, because of the earlier decision, somebody asks, they get. There's no further inquiry. The other end of the extreme would be nobody gets anything unless they file a lawsuit to get it. That doesn't seem like a very prudent thing to me. So is that what you're suggesting, that nobody would get it unless they file a lawsuit, or is there some middle ground? Yes, Your Honor, there is a middle ground, and as I said, it's the balancing test. But who does the balancing test? In the first instance, the agency would do, there would be a request made to the marshal service, and they would do the balancing test. What is the basis of the, where do they get the information upon which they do that balancing test? They would get it from the FOIA request. The person makes a request to the marshal service, and they would indicate what the circumstances are. In our view... And does the marshal service go back to the person whose mugshot is being sought and get input from them? No, no. Do you know what their privacy interests might be under their own unique situation? Well, in all of FOIA, the government does not go back to the person and ask them. They make decisions based upon the law, whether there's a privacy interest or not. And the critical thing here, and I'm waiting for my colleague to come up and explain, is that I really have two questions for Mr. Fink. I've been waiting for a long time. Can I ask you a question before you... Yes, sir. I'm sorry. I'm sorry. I thought I had. You get the request. Now, you do the balancing. Correct. And you either say yes or no. Correct. If you give it out, then the person whose mugshot it is simply suffers whatever consequences there are from that. And if you don't, they sue. Is that it? That's correct. All right. Yeah. That's what I wanted to know. Yes. Yeah, that's absolutely correct. That's the administrative process. What I was going to say, and I think... The marshal service, who in the marshal service, is there any hierarchy that it would go through beyond the first person who looks at it? Correct, Your Honor. There'll be like a FOIA officer who will make an initial cut or decision about that. The letter would go back to the requester. You're balancing the public interest that's put forth. There's somebody saying the public needs to know this because it blah, blah, blah, right? Absolutely. When you do a FOIA request, you don't have to say why you want the information. If something is FOIA-able, if that now has become a word, then you just say, this is the information I believe that you have. I want it. No reason, right? Well, under FOIA, it is the burden of the requester to show, whether it's going to be an Exemption 6 or 7C case, what is the public interest. The burden is on the requester. It must not only be a public interest, but let's keep in mind that the Supreme Court has, while the Supreme Court has broadly defined privacy, it has narrowly defined the public interest. The public interest is not just what the public might be interested in. Oh, I'd like to see that mugshot. It must say something about what the government is up to, how the government is or is not fulfilling its statutory responsibilities. Our position in this case, and plaintiff has not set forth any public interest, our position in this case is that there is no public interest because a mugshot, just by itself, says nothing. It says a lot about the person whose picture it's taken. I gather that you're saying from that is that you're going to apply this balancing test and you're not going to give any of them to them because there's no public interest. So that's not a balancing test. So I'm just trying to figure out, what is the test that you would actually apply? Going back to Judge Cook's question, this goes to some FOIA officer someplace in the bowels of the Marshall Building. So what do they look at in connection with an individualized inquiry? Okay, and you're right. We are not asking that the court hold, and we are not espousing that mugshots as a category are categorically exempt. There will be a balancing test. What we are saying is that actually in just about every case, there will categorically be a de minimis privacy interest because this is personal identifying information in a law enforcement file. Plaintiff has yet to cite a single case. I get that. The only reason the en banc would reverse this is because the panel said there was no privacy interest. So I get that. Let's assume there is some privacy interest. What are you looking at to balance that privacy interest when the FOIA officer gets it? Okay, and I'm sorry for not getting to your point quicker. In most cases, I would think there would not be a public interest because just a mugshot per se by itself is not going to say anything about what the government is up to. However, it is not categorical. It is not Default position, may I? To speed things along, Judge McKee began with default position concept. And in fact, the Marshall Service does. What I've read here, the Marshall Service has put out a memorandum or whatever it takes to get everybody in line that says our policy is to not release these anywhere. And then they had to go back and say, but the Sixth Circuit is in never, never land. But the Marshall Service is under an obligation to make this balancing test. And if I finally get to your answer, which is that generally there won't be a public interest. However, there might be a public interest in some cases. We could say there's a presumption that you don't get it. Because of the privacy interest, however that's described. Correct. But if plaintiff can make what the court, what the first court said in dicta, it speculated, it only speculated, as Judge Norris said in his dissent, that the public might show that a person was abused in processing or that the wrong person had been arrested. It said it might. Now, if the plaintiff comes in initially and says to the government, we think this is a Rodney King case. We think that he's been beaten up. And we, you know, we can make that showing. That's a different case. In that case, and if there's a substantial showing that that is true, that photograph likely will be released. So we are not saying in every case. If they can make a case that it will... Okay. Okay. Finally, finally. Okay. I'm sorry that took that long. I'm going to reserve my time. Thank you. Okay. If you have any left. All right. Mr. Fink, it's now your turn. Thank you, Judge Cook. Mr. Frank reminded me when I came in and we greeted each other that I have been involved for 22 years on behalf of the Free Press in this same trio of cases since I filed the first one in front of Judge Taylor in 1993. So obviously I have a different perspective and take on this than Mr. Frank does in the Justice Department. The Free Press believes that this court in Free Press One correctly decided the issue and that this panel should endorse it and without reservation, notwithstanding that two other circuits have disagreed with this circuit. I think we've set out our response and reasons why it's correctly decided in our brief, but the DOJ has raised some questions. Mr. Frank referred to some questions he'd like to ask me. I'm going to anticipate what they are and I'm going to try to answer them. Free Press One held that there was no privacy interest. It doesn't have to be balanced if there are no privacy interests. This court held that there is none if four requirements are met. The subject of the mugshot, the accused person, has been indicted by a grand jury upon a finding of probable cause. That person has appeared in open court on the charges. That person's identity has been publicly released by the Department of Justice, and I'll get to that in a minute as to what the department does, and is currently being prosecuted. Now, in our view, those four requirements form a narrowly tailored, balanced, nuanced holding, and that answers the question. The DOJ complains, however, one of the questions I think Mr. Frank wants to ask me is, well, you haven't explained the significance of those four requirements. Why do they matter in the privacy calculus? Well, I think it's self-evident, but I can tell you what I think based upon all my years of being involved in this issue and in this case. I think that the four requirements are there for the same reason, that we don't subject a person to the indignity and the burden of a public trial unless there first is a probable cause determination that a crime has been committed and that the accused probably committed it. It's part of the checks and fair, fundamentally fair in the prosecution and fundamentally fair in whether or not, as opposed to states which just issue them on arrestees, it's fundamentally fair in why a mugshot can be released in this context. How literally would you want that test to be enforced? For example, let's assume that instead of currently being prosecuted, he was prosecuted five years ago, but for some reason the person comes back into the public eye and you want his mugshot from five years before. Can't get it. That was the holding of this court. What's the significance of there being a current ongoing proceeding? It avoids, in my view, we could ask Judge Daughtry who wrote the opinion, but in my view, it avoids the historical information dilemma that the Supreme Court highlighted in the Reporters' Committee case. It also suggests a practical obscurity test of privacy, which I think is inherent in Reporters' Committee, which doesn't come into play if it's a current prosecution. The practical obscurity comes in with regard to an old photo, which doesn't apply to a new one. I'm sorry. Free press would be satisfied then with a rule that said if the prosecution's over, we can't get the mugshot? Yes. Yes. That's how we have always interpreted the free press warrant. These tests, not just in this case, but in all of them, particularly when they don't form the decisional basis for the test, is that somebody, a judge, a law clerk, and with all due respect to the many wonderful law clerks sitting right in here, came up with four things, and that became the test. It's a logical test, Your Honor. Judge Guy, I think it really is. The currency avoids the Reporters' Committee case, which I think kind of comes up in, because I follow this, the EU has been discussing a right to be forgotten in privacy law. We haven't gone there, but I think that's sort of embodied in Free Press 1 by requiring this to be a current prosecution, rather than the historical records that were involved in the Reporters' Committee case. What difference does it make, if anything, that we now have the internet that, if I remember right, I don't think even existed in Free Press 1. It was starting. Where now, you get a photo and it gets posted, it's ubiquitous and it lasts forever. Does that matter, and should that be taken into account in somebody's analysis? No more than, what do we do with the fact that archives and computers retain stories that we've written, and stories about indictments and criminal charges, it's all still there. The information on the internet is presumably always someplace, but it's the question of its accessibility, forever, with no effort, 24 hours a day. So, yes, somebody could come back and get one of your old mugshots out of your files at the Free Press if you allowed them to do that, but isn't that a far cry from having it posted around the world instantaneously and there's no way to ever delete it? No more so, Your Honor, than the information about someone having been indicted, having been on trial. No, I think it just, as Judge Taylor said back in 1993, it puts a face on something, but a face is not necessarily inherently private, even if it's a mugshot. It's no more so than the fact that someone has been charged, that there's been probable cause to indict someone on a crime. It's just part of the record, the historical record. It's just one part of it. If you get indicted, there's a name attached to that indictment. I get that. But if there's a mugshot, and let's assume the person voluntarily turned themselves in, so they got up and took a shower and washed their hair and put on their makeup and came in that day and they look okay. One thing that automatically happens is we get the booking information, the number and the bottom, so that carries something. But then secondly, I'm guessing a lot of times what makes this more fun for the paper is somebody's rousted out in the middle of the night in this mugshot, they don't look so hot. So how is that, what's the public interest in seeing what they look like dragged out of bed in the middle of the night, as opposed  to the press? First of all, I don't think the newspapers like whatever you said there. I might have editorialized that. A little bit, that's okay. You're a judge, you can do that. Ask Nick Nolte about that, though. Well, that's a state photo, by the way, and he was only arrested, I think, in that one. I'm not sure he was ever prosecuted. That's not a risk under the DOJ policy, which we don't, which mirrors, the part of it that mirrors Free Press One, we're not looking for that broad a scope. This is all, if I can suggest it, it is in close harmony with the Supreme Court's jurisprudence on openness in criminal procedure and proceedings of all kinds. Going back to the Richmond newspapers case in 1980, the Globe case in 1982, the two press enterprise cases in 84 and 86, this is consistent with and harmonizes with the philosophy behind that. Well even if you're right about the philosophy, it's not consistent with the practice in federal court. You can't send a reporter in here and take a picture, you know that. So maybe you can get somebody coming in and out of federal court in a perp walk or something, but you don't get to come in and take pictures of anybody. Well, I don't understand, frankly, what is private in the visage of a person. And that was, going back to Judge Taylor, she said, for better or worse, what we look like is not a private matter. That was her decision. It's not just the visage, it's the depiction in a guilty pose, I'll call it. I think that's the point, and the public interest in government functioning is quite different than the interest we're talking about. The privacy interest is more about the depiction of a guilty face. If I can respond... The reaction is, that person's guilty. You know, of course, that that's the gripe about this. All right, if I can answer that. The Free Press One panel addressed that by citing to this court's earlier decision in Schell v. U.S. Department of Health and Human Services, which said, quote, Disclosure of a document will not constitute a clearly unwarranted invasion of privacy, simply because it would invite a negative reaction or cause embarrassment. On this issue of what's the badge of criminality, if I can suggest it, it's not, if anything, the physical appearance of the defendant, but rather it's inherent in the fact that the government has charged an individual with a crime, and that a grand jury has found probable cause to believe that that person committed the crime. If we're going to talk about badge of criminality, I don't think it's even on a bad hair day, if you should pardon the expression, Judge Cook, a photograph of the person. It's the fact that person was indicted and charged, and that there was probable cause. That's the quote-unquote, if any, badge of criminality. Can I address the issue of the alleged, how did the DOJ refer to it, the irreconcilable, untenable conflict? Excuse me, I should have excused me for that, and thank you for the help. Irreconcilable conflict. And what that's about, according to the DOJ, is what happens if someone, a resident of the Sixth Circuit, requests a mugshot from a case that's pending in the Tenth and Eleventh Circuits? That comes about through the creation of what I would call administrative dicta. The DOJ added a new test that is not inherent in Free Press I. Free Press I was directed to the Marshals Services offices in the districts of the Sixth Circuit. All of a sudden, in particularly 2009, the DOJ decides, it also extends to anybody who lives in the Sixth Circuit who asks for a mugshot anywhere. They created, out of whole cloth, a national right, binding upon all the Marshals Services. Who asked them to do that? We didn't. We never interpreted Free Press I to be that broad. We interpreted it as binding only upon the offices of the Sixth Circuit districts. Nowhere else. What does that mean then? Just cases that are pending in a federal court in the four states in the Sixth? Yes, I think in shorthand, yes. Because I'm assuming if you go to a Marshals Service office, I'm guessing that these mugshots are digitized and they're available on their computer no matter where the case is pending anywhere, right? Yes, it is, but that isn't what this court required in Free Press I. I'm just following up on your... Theoretically...about this untenable position that DOJ is taking. So you'd be happy if they changed their own guidelines to say it had to be a resident of the Sixth Circuit and it had to involve a case that's pending in one of the district courts in the Sixth Circuit. Yes, in fact, their policy, which they codified for the first time in 1997 following Free Press I, says this decision applies only to the Sixth Circuit and requires disclosure of mugshots and response freedom of information requests when the photographs are maintained by a U.S. Marshals office within the Sixth Circuit, four states, regardless of whether the requester resides or has a principal place of business in the Sixth Circuit. That's how we've always viewed this. The Free Press has never, I've never been involved in every Free Press FOIA case, has never asserted a right to get a mugshot from the 10th, a case pending in the 10th or 11th or any other circuit. And in fact, not only do I think they should have returned that policy, which they changed in 2009 by issuing a one-sentence statement that conflated both offices in the Sixth. You, neither you nor Mr. Frank is here about that policy. I understand that's one of the arguments that, why it's a problem, but since your time has expired... Can I just... Oh, Jay has a question. Do you feel that the fingerprint cards that are taken at booking are discoverable under the FOIA? Never tried to do it, Your Honor. Got a thought on it? It's an interesting thought. Maybe I'll try it. Well, what's... I haven't thought that that is, I don't think it is. What's behind it is maybe privacy is the wrong way to approach this whole thing. Maybe there's some things administratively that just get done that not everything the government does is discoverable under FOIA. I would agree with that. Not everything. Okay, thank you. I would also, though... Let's just keep going. I'm sorry. Go ahead. Your position is Free Press 1 is right. We're bound by that in this case, which both you and your colleague seems to agree, and that we should say it was correct and shouldn't be revisited. Now that we have these two other cases, I'm not saying that we should or shouldn't change the outcome in the Sixth Circuit because two other circuits have gone the other way, but there is now a circuit split. So would you speak at least briefly to the question of why wouldn't we, as a circuit, at least want to address whether we want to stick with Free Press 1 or not stick with Free Press 1 in light of the now current circuit split? That was the last comment I wanted to make. I think not only should the DOJ clarify its policy that it's only applicable to the districts in the Sixth Circuit, I would ask this Court to clarify, it does no violence to the original opinion, this Court, I'm asking, I'm suggesting that this Court clarify Free Press 1 by making it clear that it did not have national reach, it had only application to the district. You're using the guise of my question to make the last point you wanted to make without answering the question, and that is whether we clarify it or not, it still is going to leave us with a circuit split, whether it's clarified or not. But not an irreconcilable problem. I don't care about that. Sixth Circuit's got one rule, two other circuits got another rule. What is your position as to whether that, what weight should we give that in your mind as to whether or not we recommend that the full Court revisit this? None. I don't think this Court has to kowtow as the DOJ suggests to the fact that two other circuits have said, eh, we don't agree with that. Kowtow means we changed our mind and we follow them. Kowtow doesn't mean we have an open mind and we reconsider things. As you know, we're not doing real well on circuit splits. I mean, I think that that's an issue for them to bring to the Supreme Court. If the Supreme Court thinks that's a weighty enough issue that they have to spend a great deal of time on, I don't think it's that weighty. It hasn't created a problem. All right. Thank you. Thank you very much. Thank you. I don't know if you have more time. I reserved five minutes, Your Honor, and I stopped at ten, so I think I have five minutes left, which is going. Two quick points. One is that Plaintiff did what he did in his brief, which is to say that Free Press I had these four characteristics, but as we said, I kept asking why. Why do those four characteristics not bring the privacy interests down from huge to substantial or whatever? But why do those four points make it so that the privacy interest is trivial, doesn't register? And I still haven't heard an answer to that. One of the things that I think Judge Guy asked, and plaintiffs, I just can't understand it, is under plaintiff's theory, if a person has been indicted, but they haven't been convicted, so in other words, they are innocent before the law, they have no privacy interest whatsoever. But if the proceedings are no longer ongoing, he's convicted, he's guilty, he's serving time, he has a privacy interest. That doesn't calculate for me. The other thing I still was waiting to hear from Plaintiff's counsel is some case law. I've yet to see a single case cited by plaintiff from a circuit court which has held that personal information in a law enforcement file has zero privacy interest. The government is not aware of a single circuit case that has held that. Personal information in law enforcement files on a wide variety of things, some of which are a lot more mundane than mug shots. ACLU versus Department of Justice involved just the docket number of a case, and the DC Circuit held that the docket number raised a privacy interest. Every case that I know of that involves personal information in a law enforcement file, the court has at least found that there is a minimal privacy interest. And as I have said, that is what we are here... I'm looking, I know you probably told us, but what is it that, what benefit does that afford? Is that your primary goal that when and if this court decides to hear this matter and bank and address the circuit split, the key for you seems to be just that the court determine that they revisit the triviality aspect, only that? No, that is not correct. That is the first thing that the court, I think... That's only a threshold? I mean that's the... That's the first thing the court needs to address, but we also think that the court based, so the court can say that there is a privacy interest and the court can give it whatever way it is. I'm trying to just get to the threshold. We think it's more than non-trivial. We think it's substantial. You're still saying that's the correction you really seek? That's the first correction. In addition, we think... That's not the only one? I beg your pardon? That is not, apparently that is not the only one, yet it seems to be repeatedly your focus. That's correct. It's not nothing. Well, perhaps I've dwelled on it too long, but that's the main thing that needs to be overcome. Then the court can go on and balance the privacy interest versus the public interest. That has already been set forth at great length in Detroit Free Press 1. It's been briefed here. It's a question of law. We have, I think, demonstrated that there is no cognizable public interest under FOIA, and so the court can resolve, the full court can resolve the entire question, hold that these matters are protected under 7C, and come in line with the 10th and as Judge Guy and the other members of the panel have, just the distinctive nature of these photographs. I don't see how you can look at that and say that there is no privacy interest whatsoever. These things, as Your Honor, Judge McKee pointed out, they last forever on the internet. So that someone's youthful indiscretion, they're bug shots from the state of Larry King and Bill Gates. They're youthful indiscretion. Our children, perhaps, get picked up for DWI, a conviction which is, they're found innocent, it's wiped off, charges are dropped. That mug shot could follow them and have repercussions on them for the rest of their lives. So this is a serious issue not to be mocked, and we would just like the court to do what Judge Sutton suggested, right, why the opinion should be overruled. And what the court to change the law. Thank you for your time. Thank you very much. All right, we have your matter. We will consider it carefully and issue an opinion in due course.